UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

GARTH DANIEL RICHMOND, II,
  *Petitioner*,

v.                                                                 1:22-cv-531-MSN-JFA

WARDEN RICK WHITE,
  *Respondent.*

# MEMORANDUM OPINION

Garth Daniel Richmond, II ("Petitioner" or "Richmond"), a Virginia inmate proceeding *pro se*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the validity of his February 6, 2019, convictions in the Circuit Court of Fairfax County for abduction, assault and battery, sexual penetration with an animate object, sexual penetration with an inanimate object, and aggravated sexual battery. [Dkt. No. 1]. The Respondent filed a Rule 5 answer and a motion to dismiss with supporting briefs and exhibits. [Dkt. Nos. 13-15]. Richmond exercised his right to file responsive materials to the motion to dismiss pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K). [Dkt. No. 21]. Because the parties have fully briefed the issues presented and oral argument would not aid the decisional process, this matter is now ripe for disposition. For the reasons that follow, Respondent's motion to dismiss must be granted and the petition must be dismissed with prejudice.

**I.   Procedural History**

Richmond is detained pursuant to a final judgment of the Circuit Court of Fairfax County, Virginia. On October 31, 2018, a jury convicted Richmond of five counts: (1) abduction, in violation of Virginia Code § 18.2-47; (2) assault and battery, in violation of Virginia Code § 18.2-57; (3) sexual penetration with an animate object, in violation of Virginia Code § 18.2-67.2;

(4) sexual penetration with an inanimate object, in violation of Virginia Code § 18.2-67.2; and (5) violation of a protective order, in violation of Virginia Code § 16.1-253.2.[1] Richmond also pleaded guilty to maiming, in violation of Virginia Code § 18.2-51, and aggravated sexual battery, in violation of Virginia Code § 18.2-67.3. (CCT at 398-400). On January 11, 2019, Richmond entered a guilty plea, pursuant to a plea agreement and *North Carolina v. Alford*, 400 U.S. 25 (1970), to maiming and aggravated sexual battery. (*Id.* at 411-19). By final order dated February 6, 2019, the trial court imposed a sentence of thirty-nine years and twelve months (on the misdemeanor conviction) with twenty years suspended, resulting in a cumulative sentence of nineteen years and twelve months of imprisonment. The sentences for maiming and aggravated sexual battery were suspended. (*Id.* at 434-40).

Richmond, by counsel, appealed his convictions to the Court of Appeals of Virginia, assigning error to the trial court's denial of a proposed jury instruction as well as the court's decision not to provide a supplemental instruction in response to a jury question. By order dated October 4, 2019, the Court of Appeals denied petitioner's appeal. (*Richmond v. Commonwealth*, Record No. 0285-19-4 (hereinafter "CAV at ___"), at 48-52). The court summarized the evidence as follows:

> On July 24, 2016, the victim was asleep in her car when she awoke to find appellant knocking on her car window. Appellant and the victim had a child together, and a protective order forbade appellant from having contact with the victim. The victim began to call the police, but the appellant threatened to kill her if she continued to call. The victim eventually unlocked the driver's side door because she didn't want appellant to further damage her car. Appellant entered the vehicle and immediately attacked the victim. Appellant punched her in the face and hit her multiple times. He then restated his intention to kill her. Appellant strangled the victim and sexually assaulted her. Appellant forced the victim to get out of the car, and

---

[1] Richmond's first trial ended in a mistrial on June 13, 2018, because the jury had not been able to reach a unanimous decision on any of the indictments. (Circuit Court Criminal Record No. FE2016-0001080 at 299) (hereinafter "CCT at ___").

>he led her into a nearby wooded area where he continued the physical attack and the sexual abuse. Eventually, appellant left the area and the victim ran for help and called the police.

(*Id.* at 48-49). On January 24, 2020, a three-judge panel adopted the reasoning of the October 4, 2019, opinion denying the petition for appeal. (*Id.* at 61). Richmond, by counsel, appealed the January 24 decision to the Supreme Court of Virginia, raising the same two issues. The Supreme Court of Virginia refused his appeal on May 21, 2021. (*Richmond v. Commonwealth*, Record No. 201077).[2] Richmond did not file a petition for writ of habeas corpus in state court or file any other state post-conviction proceeding. [Dkt. 1 at 7-8, 10-11, 14].

## II.     Circuit Court Proceedings

### A.     Pretrial Issues

Prior to trial, Richmond's attorney, Toni Fay, brought several issues to the trial court's attention regarding complaints that Richmond had about her representation, but made it clear that counsel was not seeking a continuance. (CCT at 1799).[3] Richmond's jury trial in June 2018, at which Fay represented him, had resulted in a hung jury, and the prosecution had disclosed new material in discovery. (*Id.* at 1814, 1796-97). Fay stated that she had sufficient time to review the discovery but that Richmond did not feel that he had "enough of an opportunity, to go over what that information is and the effect that it's going to have on his new trial." (CCT at 1795-96).

One of the items of discovery that Fay had not had time to review with Richmond was the over eighty-five hours of phone calls between Richmond and Hottinger, the victim. (*Id.* at 1796).

---

[2]     The Supreme Court of Virginia granted Richmond a delayed appeal on August 20, 2020. (CAV at 67).

[3]     Fay was appointed on May 26, 2017, when Richmond's original counsel, the Public Defender, withdrew due to a conflict of interest. (CCT at 191). On September 1, 2017, the circuit court appointed an investigator to assist in Richmond's defense, with a limit of one hundred hours. (*Id.* at 201). The investigator's appointment was continued after the mistrial and he was approved for an additional sixty hours. (*Id.* at 317).

Richmond wanted more time to discuss these recordings with his attorney despite having participated in the conversations. (*Id.* at 1796-99).

Richmond told the trial court that his attorney had advised him of the latest evidence "less than two weeks ago" and claimed he did not know about the recorded phone calls from jail. (*Id.* at 1810). Richmond's attorney replied that "some professional things prevent me from commenting on what he's just said." (*Id.* at 1811). The trial court clarified that Richmond's counsel believed that legal ethics rules prevented her from commenting on Richmond's statements. (*Id.* at 1811).

The prosecution then proffered evidence that Richmond had attempted to contact Hottinger through his mother to dissuade Hottinger from coming to court and/or to postpone the trial, so that the protective order against Richmond would expire and he could speak to Hottinger directly. (*Id.* at 1812-13). Richmond, *pro se*, requested the court to remove his attorney from the case, which the trial court denied, noting that Fay had defended him in his previous jury trial on the same charges and had convinced three jurors not to convict him. (*Id.* at 1814). The trial court then ruled that to the extent that Richmond's *pro se* motion for a continuance was before the court, it was denied. (*Id.* at 1815).

After the prosecution presented its case, Richmond again asked to address the trial court. (*Id.* at 2620). Richmond complained that Fay did not want to call witnesses he wanted her to call, stating:

> "I'm really not comfortable going forward at this point whatsoever. I tried to address this before the trial started. I have witnesses that were subpoenaed, people that I need to get on that stand, and Ms. Tony [sic] does not want to call them for whatever reason she has. I don't know what they are.

(*Id.* at 2620). Fay responded to Richmond's concerns, saying:

> Your Honor, Mr. Richmond is telling you that we are not on the same page. [He is] right, we are not on the same page. I am his lawyer, I am trying to put forth the best arguments and defense that

4

> I can. I have a strategy, a theory, a theme . . . . I don't know what to do about the fact that he's not comfortable with my representation, but I'm telling you that I have made a strategic decision based on what I think is the best way to proceed, knowing what I know about this case, and knowing what I know about the witnesses.

(*Id.* at 2622). The trial court considered Richmond's statements as a request "to either declare a mistrial or continue the case," and denied those requests. (*Id.* at 2623). The court noted that Richmond's attorney was "permitted to make strategic judgments." (*Id.* at 2623). The court also denied Richmond's motion to remove his attorney from the case. (*Id.* at 2625-26).

**B.     Plea Agreement**

After his second jury trial, Richmond entered an *Alford* plea to malicious wounding and aggravated sexual battery. (*Id.* at 411-19). He executed a plea agreement and an advice of rights form, certified that he was satisfied with the services of his attorney, and stated that he had consulted with her prior to entering a plea of guilty to each charge. (*Id.* at 411-16). The trial court conducted a plea colloquy and accepted his pleas of guilty. (*Id.* at 3029-39). The prosecution proffered the following summary of the evidence:

> [O]n July 24, 2016, Katie Hottinger, the victim, was sleeping in her vehicle in the early morning when she woke up to Mr. Garth Richmond, the father of her child, the Defendant, banging on her window. As [Richmond] was banging on the window, [Hottinger] tried to call 911. [Richmond] stated, "If you dial the police, I will kill you. You're going to die." [Richmond] then forcefully knocked on [Hottinger's] window; she opened the side door. He immediately started to verbally and physically assault her. [Richmond] punched her in the lip, hit her multiple times. He stated, "Snitches get stitches." [Hottinger] was unconscious at one point, [and she] remembers trying to move away. At one point, he bent his left arm against her throat. She felt everything went black and she was unable to breathe. He then took off her clothes, [and] pushed her in the backseat. He was forcefully fingering her, putting his fingers inside her vagina. He then had his arms around her legs, so she was unable to move. [Richmond] took out a lighter [and] heated up the lighter. He pressed the metal lighter on [Hottinger's] nipples and vagina[l] area. [Hottinger] said that was extremely painful. [Hottinger] stated, "The police know where I'm sleeping. They are patrolling the area.

5

> You got to leave." [Richmond] then shoved [a] vacuum attachment into her vagina and stated that "It didn't go inside of you, bitch, you snitch." Next, [Richmond] forced [Hottinger] out of the vehicle, walked her to the woods at the end of the Darkwood Circle [and] forcefully held her wrists. The victim told [Richmond] she needed to go to the bathroom. [Richmond] responded by urinating on her head, at which point, he grabbed her wrist [and] walked her much deeper into the woods. He would continue to beat her [and] stated that he was going to give her to his Baltimore gang members for prostitution. [Richmond] then pushed her down [and] at one-point stuck sticks inside her vagina. As he was sticking sticks inside her vagina, [Richmond] was holding her down. [Hottinger] tried to move away since at that point her vagina was hurting due the sticks. He then forced her to take off her shirt since it was covered in blood, because her nose was bleeding after the last punch. He threw the shirt in the woods. He gave her his shirt. [Richmond] had [Hottinger's] cell phone and threw it down. He stated he was going home and told her to wait five minutes and if he was not back to kill her, she could live this time. He told her to drop the charges from the previous domestic assault and give the child to him and that he'll never be heard from again. The victim agreed and [Richmond] left. Once [Richmond] was out of sight, [Hottinger] ran the opposite direction. She flagged down a newspaper delivery person. She used her cell phone to call the police. [Hottinger] was immediately evaluated by EMT Aaron Miller and taken to the hospital. Doctors from Inova and VCU indicated the victim had second degree burns on her nipples and second degree burns to her vagina[l] area, [on] which [Richmond] used the lighter on [Hottinger]. She received sutures to her lip. The nurse, Nurse Ho, performed a SANE exam on [Hottinger]. She observed four areas of thermal injuries, five marks on her neck, and bruises throughout her body. [Hottinger] indicated that she had pain in her vagina[l] area and nipples that lasted a couple weeks[,] and she was unable to walk for a few days. There was a protective order in effect at the time, and the protective order was properly served. The protective order indicated no contact and to not commit any further acts of abuse.

(*Id.* at 3039-42).

### III.     Federal Habeas Petition

On April 27, 2022,[4] Richmond executed his federal petition for a writ of habeas corpus, which raises five grounds for relief:

I. Ineffective Counsel[:] My lawyer subpoenaed people I had not known, also was not willing to put multiple defense witnesses on the stand. My lawyer acted very negligently and was not prepared and asked to be withdrawn from the case before the trial started. She did not share exculpatory evidence with me, nor investigated witnesses I told her about who were detrimental to my defense. And refused to ask the witness questions I told her to ask.

II. Unknown Plea Deal[:] While preparing this habeas corpus, I wrote the Fairfax Public Defender's Office for a copy of my entire casefile. (They were assigned to me before withdrawing due to conflict of interest.) When I went through the casefile[,] I discovered an email between Robert Frank and the prosecutor in the case, and became aware of a plea deal that the prosecutor offered that my lawyer never made me aware of.

III. New DNA Evidence[:] After my trial I became aware of 3 sources of DNA that was never processed by law enforcement or raised as an issue by my lawyer that could've possibly exonerated me. A straw from a drinking cup, 2 cigarette butts, and handprints from a car door.

IV. New Forthcoming Witness Statements[:] Several people have stated they were witnesses to different aspects of my case who are willing to sign affidavits. Including the prosecution's main witness who is stating they were coached and threatened to make statements and lie.

V. Being Forced to go to Trial[:] I stated to the trial judge several times that I was not comfortable going to trial with my assigned lawyer or on my set trial date. There was evidence that I did not have time to review and my lawyer was very combative. I stated this on the record before the trial started and before the defense presented our case. (Dkt. 1 at 6-12).

## IV.   Exhaustion and Procedural Default

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. *See* 28 U.S.C. § 2254(b); *Granberry v Greer*, 481 U.S. 129 (1987). To

---

[4] The petition was filed on May 11, 2022, but Richmond indicates it was placed in the prison mailing system on April 27, 2022. [Dkt. No. 1 at 17]. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (a petition is deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk").

comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia must have presented the same factual and legal claims raised in his § 2254 petition to the Supreme Court of Virginia. *See, e.g.*, *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Kasi v. Angelone*, 300 F.3d 487, 501-02 (4th Cir. 2002). The petitioner bears the burden of proving exhaustion. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

Further, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* "A habeas petitioner is barred from seeking federal review of a claim that was presented to a state court and clearly and expressly denied on the independent, adequate state ground of procedural default." *Bennett v. Angelone*, 92 F.3d 1336, 1343 (4th Cir. 1996) (cleaned up); *see also Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). A state procedural rule is "adequate" if it is firmly established and regularly or consistently applied by the state court and "independent" if it does not depend on a federal constitutional ruling. *Yeatts v. Angelone*, 166 F.3d 255, 263-64 (4th Cir. 1999). A petitioner must present his federal claims to the appropriate state court in the manner required by the state court, to give the state court "a meaningful opportunity to consider allegations of legal error." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986).

Richmond admits in his federal petition that he did not file a petition for writ of habeas corpus in state court or any other state post-conviction proceeding. [Dkt. 1 at 7-8, 10-11, 14].[5] A

---

[5] The form petition filed by Richmond includes a warning, in bold print, about the need to exhaust state remedies before filing in federal court: "**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal**

8

claim that has never been raised in state court may nevertheless be "treated as exhausted" if "the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)). Richmond is no longer able to bring these claims in state court because they would be barred by Virginia's habeas statute of limitations, Virginia Code § 8.01-654(A)(2), which provides that a petitioner challenging a criminal conviction must file a state habeas petition "within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." Richmond's sentencing order was entered on February 6, 2019, and the Supreme Court of Virginia refused his petition for appeal on May 21, 2021. Petitioner, therefore, had until May 23, 2022, to file a state petition.[6] He executed his federal petition on April 27, 2022, nearly a month before the expiration of the state statute of limitations. [Dkt. No. 1 at 17].

A dismissal under § 8.01-654(A)(2) is an independent and adequate state law grounds for procedural default. *See Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir 2000) (finding Virginia's limitations period and successive petition bar are independent an adequate state grounds); *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006); *see, e.g.*, *Baker v. Clarke*, 95 F. Supp. 3d 913, 917-18 (E.D. Va. 2015) ("as many courts have held, Virginia Code § 8.01-654(A)(2) constitutes an adequate and independent state-law procedural rule, as it is a statutory rule that is not tied to the federal Constitution") (citation omitted). Because Virginia's statute of limitations is an adequate and independent state procedural rule barring federal habeas review, the present federal claims are exhausted and simultaneously procedurally defaulted. *See Burket v. Angelone*,

---

**court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date."** [Dkt. No. 1 at 6].

[6] The statute of limitations expired during a weekend, and May 23, 2022, was a Monday.

9

208 F.3d 172, 183 n.11 (4th Cir. 1999); *Sparrow*, 439 F. Supp. 2d at 588 ("Since the procedural bar that gives rise to exhaustion is an independent and adequate state ground, . . . [the] claims raised in the instant petition must be treated as simultaneously exhausted and procedurally barred from federal habeas review.") (citation omitted).[7]

Federal courts may not review defaulted claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. *Harris v. Reed*, 489 U.S. 255, 260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. *See Coleman*, 501 U.S. at 753-54; *Clozza v. Murray*, 913 F.2d 1092, 1104 (4th Cir. 1990); *Clanton v. Muncy*, 845 F.2d 1238, 1241-42 (4th Cir. 1988). A court need not consider the issue of prejudice in the absence of cause. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995).

In his response to the motion to dismiss, Richmond states that he "could not file [his] claims in a state habeas proceeding due to procedural time bar." [Dkt. No. 21 at 3]. The record, however, demonstrates otherwise. First, Richmond asserts and admits that he learned of the plea offer (Ground II) and the cigarette butts (Ground III) during the pendency of his direct appeal, well before the state statute of limitations began running at the conclusion of his direct appeal. [Dkt. No. 21 at 2]. In addition, the other three claims (Grounds I, IV, and V) all involve matters that occurred during the trial proceedings. In short, Richmond was aware of the basis of all of his claims

---

[7] Ground V is also simultaneously defaulted and exhausted because it alleges a non-jurisdictional legal error by the trial court—the denial of Richmond's request for either a continuance or mistrial [Dkt. 1 at 12] —which could have been asserted as error on appeal. A claim that could have been raised on direct appeal is barred from habeas review in Virginia courts under *Slayton v. Parrigan*, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974) (non-jurisdictional issues that could have been raised at trial or on direct appeal are not cognizable in a petition for a writ habeas corpus); *see, e.g., Morva v. Warden of the Sussex I State Prison*, 285 Va. 511, 513, 741 S.E.2d 781, 784 (2013) (holding a claim alleging a due process violation was barred from review in habeas under the rule of *Slayton*). *Slayton* is an independent and adequate state law ground that precludes federal review absent a showing of cause and prejudice for the default. *See Prieto v. Zook*, 791 F.3d 465, 468 (4th Cir. 2015) (citations omitted).

before the conclusion of his direct appeal, which means he had a full year to file his claims in state court and did not, despite preparing and filing a federal habeas petition before the state habeas petition's deadline had lapsed. Richmond executed his federal petition on April 27, 2022, which is almost a month before the state statute of limitations expired on May 23, 2022.[8] Consequently, he could have filed a state habeas petition raising each claim set forth in his federal petition before the one-year statute of limitations for a state habeas petitions expired. To the extent he may claim ignorance, Richmond's

> ignorance of his ability to file for habeas relief fails to constitute an extraordinary circumstance that would warrant equitable tolling. It is well established that "even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (citations omitted). Simply put, [Petitioner] fails to demonstrate some external impediment, rather than his own lack of diligence, prevented him from filing a habeas petition in a timely fashion.

*O'Neill v. Dir., Va. Dep't of Corr.*, No. 3:10cv157, 2011 U.S. Dist. LEXIS 88096, at *19 (E.D. Va. Aug. 9, 2011), *appeal dismissed*, 470 F. App'x 200 (4th Cir. 2012).[9] Indeed, the federal form expressly warned Richmond he needed to exhaust his state remedies before filing in federal court.[10]

---

[8] The federal petition was filed by the Clerk on May 11, 2022, twelve days before the state statute of limitations expired.

[9] *Pearson v. North Carolina*, 130 F. Supp.2d 742, 744 (W.D.N.C. 2001) ("ignorance of the proper calculation of the period of limitation does not warrant equitable tolling"); *Rouse v. Lee*, 339 F.3d 238, 248-49 (4th Cir. 2003) (holding that a party's incorrect interpretation of the Antiterrorism and Effective Death Penalty Act ("AEDPA") statute of limitations did not present extraordinary circumstances to warrant equitable tolling); *Fisher v. Johnson*, 174 F.3d 710, 714-15 (5th Cir. 1999) ("Ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.")

[10] In situations such as this case presents, a habeas petitioner can file in state court at the same time he files in this Court. The Supreme Court has held that "[a] prisoner seeking state postconviction relief might avoid this predicament . . . by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (citing *Rhines v. Weber*, 544 U.S. 269, 278 (2005)); *Hyman v. Keeler*, 2011 U.S. App. LEXIS 15161 at *30 (4th Cir. Aug. 10, 2011) (holding *Pace* "extended the *Rhines r*ationale beyond mixed 2254 petitions"); *see also Dreyfuse v. Pszczokowski*, No. CV3:16-06717, 2017 U.S. Dist. LEXIS 28034 at *43-44 (S.D. W. Va. Jan. 6, 2017) (noting Third, Fourth, Seventh, Ninth, and Tenth Circuits have extended *Rhines* stay and abey procedure to unmixed petitions), *adopted by*, 2017 U.S. Dist. LEXIS 26738 (S.D. W. Va. Feb. 27, 2017). *See, e.g., Freeman v. Page*, 208 F.3d 572,

Richmond also asserts he is actually innocent based upon (1) the unnamed witnesses he alleges his attorney was ineffective for not subpoenaing, and (2) his attorney's ineffectiveness for going to trial without testing the cigarette butts. He argues these facts satisfy the miscarriage of justice standard because the witnesses and the DNA results from the cigarette butts would have proved Petitioner was innocent. [Dkt. No. 21 at 3]. Actual innocence, however, is not a freestanding claim in habeas corpus proceedings. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a free-standing claim of actual innocence."); *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993) ("We have never held that [habeas relief] extends to freestanding claims of actual innocence."). To show actual innocence that would excuse procedural default, a petitioner must show that an alleged constitutional violation probably resulted in his conviction although he was actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). To establish the requisite probability, a petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence. *Id.* This means that Richmond must establish that his convictions resulted from a "constitutional error" and that he "is actually innocent of the crime." *Id.* at 324. A claim of actual innocence requires Richmond to present "*new* reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* (emphasis added).[11] "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.* Moreover, "actual innocence" means factual innocence

---

577 (7th Cir. 2000) ("a prisoner who wants to pursue state relief while assuring an entitlement to federal relief can protect himself by filing in both courts. The federal action should be stayed while the state court decides what to do."). Here, Richmond's § 2254 petition raised five claims that he could have filed in both state and federal courts in April 2022, and then sought a stay and abey order.

[11]   AEDPA does not procedurally bar a claim of actual innocence. *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).

and not just legal insufficiency. *See Calderon v. Thompson*, 523 U.S. 538, 559 (1998) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.").[12]

To the extent Grounds III and IV may be read as an assertion of a miscarriage of justice or as freestanding claims of actual innocence, they fail. In Ground III, as noted, Richmond alleges that after trial he became aware of possible evidence in his case but does not proffer how DNA testing of a straw, two cigarette butts, and a palmprint would have "possibly exonerated" him. In Ground IV, he claims that "several people have stated they were witnesses to different aspects of my case who are willing to sign affidavits. Including the prosecution's main witness who is stating they were coached and threatened to make statements and lie." [Dkt. 1 at 11]. Richmond, however, has not provided any affidavits nor has he provided any test results from the physical evidence; he merely hopes that further investigation might provide the basis for an arguable theory of innocence. *See Rashid v. Clarke*, No. 1:18cv262, 2018 U.S. Dist. LEXIS 69231, *7 (E.D. Va. Apr. 24, 2018) ("conclusory and unsupported assertion of actual innocence falls well short of the showing necessary to overcome the limitations bar") (citing *U.S. v. Mikalajunas*, 186 F.3d 490, 494 (4th Cir. 1999)); *see also McQuiggin*, 569 U.S. at 392 (noting a petitioner must make "a credible showing of innocence"). At most, he complains that some physical evidence was not tested and makes an unsupported claim that some individuals are "willing to sign affidavits." [Dkt. 1 at 11]. *Cf. Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer what favorable evidence or testimony

---

[12] If a petitioner meets the burden of producing new, truly reliable evidence of his or her innocence, the Court then considers "all the evidence," old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial,' and determines whether the petitioner has met the standard for a gateway claim of innocence. *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327-28). "The Court need not proceed to this second step of the inquiry unless the petitioner first supports his or her claim with evidence of the requisite quality." *Hill v. Johnson*, No. 3:09cv659, 2010 U.S. Dist. LEXIS 137567, * 15 (E.D. Va. Dec. 30, 2010) (citing *Weeks v. Bowersox*, 119 F.3d 1342, 1352-53 (8th Cir. 1997); *Feaster v. Beshears*, 56 F. Supp. 2d 600, 610 (D. Md. 1999)). Here, as in *Feaster*, Richmond has failed to submit any evidence, let alone new reliable evidence of his innocence.

would have been produced.") (citing *Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990)); *see also Teleguz v. Zook*, 806 F.3d 803, 806-09 (4th Cir. 2015) (affirming district court's decision to dismiss without hearing a procedurally barred habeas claim where witnesses had recanted and provided affidavits).[13] Indeed, by stating that further analysis could "possibly" exonerate him, Richmond effectively acknowledges that further analysis might also provide further evidence against him.[14]

---

[13] In his response to the motion to dismiss, Richmond has submitted names (his mother, and an alleged friend of the victim, Nicole Smith). [Dkt. No. 21 at 4, 5]. He did not, however, submit an affidavit from either witness. His response also indicates that trial counsel had interviewed each witness or had determined the witness was not credible. [*Id.*]. "When a petitioner's ineffective assistance of counsel claim rests on trial counsel's failure to call particular witnesses, expert or otherwise, we require 'a specific proffer . . . as to what an expert witness would have testified.'" *Vandross v. Stirling*, 986 F.3d 442, 452 (4th Cir. 2021) (citation omitted). A petitioner's failure to do so "reduces any claim of prejudice to mere speculation and is fatal to his claim." *Id.*; *see Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.").

[14] Richmond's trial counsel pursued a defense that challenged the victim's credibility based upon lies that she had told, her unfaithfulness to Richmond while they were in a relationship, her drug use, and inconsistencies between her testimony and the physical evidence. (10/29/2018 Tr. at 52-63). Trial counsel also pointed out failures by the police in the investigation for not canvassing the neighborhood for witnesses and not testing items of clothing and blood evidence found in the car for DNA. (*Id.* at 65-69). Defense counsel further pointed out that at least three other males could have been the perpetrator (Tommy Dorrzapf, Devante Wright, and Mr. Botti) (*Id.* at 84-97); that the defendant did not have any scratches or like marks even though he was allegedly dragging the victim through a wooded area (*Id.* at 97-98); and that DNA evidence did not establish Richmond's presence at the scene but did reveal Wright's DNA on the vacuum cleaner attachment (*Id.* at 90-91, 97). In short, the evidence, including the Commonwealth's 110 exhibits, did not place Richmond at the scene of the crimes and allowed a credible argument that other males in the victim's life knew where she was at that moment and could have perpetrated the crime.

Untested evidence does not establish a claim of ineffective assistance of counsel or that a defendant is not the perpetrator. *See Curry v. Secretary, Florida Department of Corrections*, 735 F. App'x 609, 612 (11th Cir. 2018) (trial counsel was not ineffective in failing to obtain DNA test results prior to trial because "at trial, he used their absence strategically, arguing that there was no physical evidence [of] any sexual activity between" the defendant and the victim); *see, e.g.*, *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) (failure to have blood on a carpet tested was not ineffective assistance because "defense counsel made a strategic decision not to pursue this line of evidence because they feared that Grisby's blood *would* be found"). Further, the area in which the crime occurred was a residential neighborhood with a playground and several trails and sidewalks. (CCT Comm. Ex. 27-46). It would not have been of much benefit to have DNA from the straw, cigarette butts, or handprint reveal the presence of a stranger unconnected to the victim at an unspecified point in time. Indeed, even the recovery of Wright's DNA from the vacuum cleaner attachment did not exonerate Richmond. Importantly, testing the evidence would have prohibited trial counsel from being able to point out flaws in the manner in which the case had been investigated and may have resulted in evidence that would have tied Richmond to the car, and possibly the scene as well. *See Williams v. Kelly*, 816 F.2d 939, 950 (4th Cir. 1987) (counsel is not ineffective "merely because he overlooks one strategy while vigilantly pursuing another"). The "failure of the strategy to produce an acquittal does not mean that it was incompetent." *Jackson v. United States*, 473 F. Supp. 2d. 640, 646 (D. Md. 2006).

Accordingly, this Court concludes that the claims in the instant federal petition are defaulted, and Richmond has failed to establish cause to excuse his defaults.

## V. Conclusion

For the foregoing reasons, the motion to dismiss the petition [Dkt. No. 13] is granted and the petition is dismissed with prejudice. An appropriate Order shall issue.[15]

/s/
Michael S. Nachmanoff
United States District Judge

August 8, 2023
Alexandria, Virginia

---

[15] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.